**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TODD C. BANK,

                        Plaintiff,

    v.

NFL PROPERTIES LLC,

                        Defendant.

Case No. 1:25-cv-03981-CM

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NFL PROPERTIES LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................. 1

Factual Background.................................................................................................... 2

    I.   The Parties ............................................................................................... 2

    II.   Plaintiff's Complaint for Declaratory Judgment ................................... 5

Argument .................................................................................................................. 7

    I.   Legal Standard.......................................................................................... 7

    II.   The Complaint Should be Dismissed Because There is No Justiciable Controversy......... 8

    III.   The Court Should Invoke its Discretion to Dismiss the Declaratory Judgment Action ... 10

    IV.   The Complaint Should be Dismissed Because Plaintiff's Legal Theory Fails as a Matter of Law .................................................................................. 12

Conclusion .............................................................................................................. 19

CERTIFICATE OF COMPLIANCE ................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................7

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796, 802 (7th Cir. 2014) ........................................................................3

*Bank v. Al Johnson's Swedish Rest. & Butik, Inc.*,
  795 F. App'x 822 (Fed. Cir. 2019) ........................................................................5

*Bank v. Alarm.com Holdings, Inc.*,
  828 F. App'x 5 (2d Cir. 2020) ...............................................................................4

*Bank v. Alleviate Tax, LLC*,
  No. 23-cv-5457, 2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)...........................4

*Bank v. Brooklyn Law Sch.*,
  No. 97-cv-7470, 2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000) ..............................4

*Bank v. Gohealth, LLC*,
  No. 19-cv-5459, 2021 WL 1884671 (E.D.N.Y. May 11, 2021), *aff'd*, No. 21-
  1287-cv, 2022 WL 1132503 (2d Cir. Apr. 18, 2022) ...........................................4

*Bank v. Katz*,
  No. 08-cv-1033, 2009 WL 3077147 (E.D.N.Y. Sept. 24, 2009), *aff'd*, 424 F.
  App'x 67 (2d Cir. 2011)..........................................................................................4

*Bank v. NFL Properties LLC*,
  No. 1:24-cv-08814-CM (S.D.N.Y.) .......................................................................1

*Bank v. Sirlin*,
  830 F. App'x 690 (2d Cir. 2020) ...........................................................................4

*Bank v. Spark Energy, LLC*,
  No. 19-cv-4478, 2020 WL 5752185 (E.D.N.Y. Sept. 24, 2020), *aff'd*, 860 F.
  App'x 205 (2d Cir. 2021).......................................................................................4

*Bank v. Uber Techs. Inc.*,
  No. 15-cv-4858, 2015 WL 8665441 (E.D.N.Y. Dec. 11, 2015), *aff'd*, 669 F.
  App'x 579 (2d Cir. 2016)........................................................................................4

*Bank v. United States Dep't of the Treasury*,
  No. 19-3977, 2021 WL 5022645 (2d Cir. Oct. 29, 2021).....................................4

*Bd. of Educ. v. Califano*,
   479 F. Supp. 561 (S.D.N.Y. 1979) ................................................................7

*Bd. of Governors of the Univ. of N.C. v. Helpingstine*,
   714 F. Supp. 167 (M.D.N.C. 1989) ...............................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................7

*Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*,
   510 F.2d 1004 (5th Cir. 1975) .......................................................................15

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*,
   No. 09 Civ. 7352, 2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010) ...................10, 11

*Chi. Bears Football Club, Inc. v. 12th Man/Tenn. LLC*,
   2007 WL 683778 (T.T.A.B. 2007) .................................................................14

*Christian Louboutin, S.A. v. Yves Saint Laurent Am. Holding, Inc.*,
   696 F.3d 206 (2d Cir. 2012).........................................................12, 14, 16

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
   977 F.2d 734 (2d Cir. 1992)...........................................................................10

*Eliya, Inc. v. Steve Madden, Ltd.*,
   749 F. App'x 43 (2d Cir. 2018) .....................................................................12

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
   954 F.3d 118 (2d Cir. 2020)...........................................................................8

*Geisha, LLC v. Tuccillo*,
   525 F. Supp. 2d 1002 (N.D. Ill. 2007) .......................................................8, 9

*Hayles v. Aspen Props. Grp., LLC*,
   No. 16 Civ. 8919, 2018 WL 3849817 (S.D.N.Y. Aug. 13, 2018) ..................6

*Indianapolis Colts Inc. v. Metro. Balt. Football Club Ltd.*,
   34 F.3d. 410 (7th Cir. 1994), *overruled on other grounds by Advanced
   Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th
   Cir. 2014) ........................................................................................................3

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982)........................................................................................12

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023).......................................................................................13

*Makarova v. United States,*
201 F.3d 110 (2d Cir. 2000) ................................................................................. 7

*Matthew Bender & Co., Inc. v. West Publishing Co.,*
No. 94 Civ. 0589, 1996 WL 223917 (S.D.N.Y. 1996) ........................................ 9

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007) .............................................................................................. 7

*Muller v. Olin Mathieson Chem. Corp.,*
404 F.2d 501 (2d Cir. 1968) ............................................................................ 8, 10

*Nat'l Football League Props., Inc. v. Consumer Enters., Inc.,*
26 Ill. App. 3d 814, 327 N.E. 2d. 242 (1975) ..................................................... 3

*Nat'l Football League Props., Inc. v. N.J. Giants, Inc.,*
637 F. Supp. 507 (D.N.J. 1986) ........................................................................... 3

*Nat'l Football League Props., Inc. v. Wichita Falls Sportswear, Inc.,*
532 F. Supp. 651 (W.D. Wash. 1982) .................................................................. 3

*Nat'l Football League v. Coors Brewing Co.,*
205 F.3d 1324 (2d Cir. 1999) .............................................................................. 3

*NBA Props., Inc. v. Dahlonega Mint, Inc.,*
41 F. Supp. 2d 1341 (N.D. Ga. 1998) ................................................................. 3

*Ohio State Univ. v. Skreened Ltd.,*
16 F. Supp. 3d 905 (S.D. Ohio 2014) ................................................................ 14

*Penn. State Univ. v. Vintage Brand LLC,*
614 F. Supp. 3d 101 (M.D. Pa. 2022) ................................................................ 17

*Penn. State Univ. v. Vintage Brand LLC,*
715 F. Supp. 3d 602 (M.D. Pa. 2024) ................................................................ 18

*PIM Brands, Inc. v. Haribo of Am., Inc.,*
81 F.4th 317 (3d Cir. 2023) ............................................................................... 13

*Plasticolor Molded Products v. Ford Motor Co.,*
713 F. Supp. 1329 (C.D. Cal. 1989), *vacated by consent judgment*, 767 F.
Supp. 1036 (C.D. Cal. 1991) ......................................................................... 16, 17

*Qualitex Co. v. Jacobson Prods. Co.,*
514 U.S. 159 (1995) ............................................................................................ 16

*Saleh v. Sulka Trading Ltd.,*
957 F.3d 348 (2d Cir. 2020) ............................................................................ 8, 10

iv

*Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*,
   983 F.3d 1273 (11th Cir. 2020) ............................................................14

*Sobini Films v. Tri-Star Pictures, Inc.*,
   No. cv-01-06615-ABC, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001)............................9, 10

*Starter Corp. v. Converse, Inc.*,
   84 F.3d 592 (2d Cir. 1996)...........................................................8, 10

*Univ. of Pittsburgh v. Champion Prods., Inc.*,
   566 F. Supp. 711 (W.D. Pa. 1983)................................................18, 19

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
   88 F.4th 125 (2d Cir. 2023) ...........................................................13

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
   916 F.2d 76 (2d Cir. 1990)........................................................13, 16

*Who Dat Yat Chat, LLC v. Who Dat, Inc.*,
   Nos. 10-1333; 10-2296, 2012 WL 1118602 (E.D. La. Apr. 3, 2012).................................12, 17

### STATUTES

15 U.S.C. § 1065 ...............................................................................3

15 U.S.C. § 1125(a)(1)(A) ...............................................................15

28 U.S.C. § 2201(a) .........................................................................7

Declaratory Judgment Act ............................................................7, 8

### OTHER AUTHORITIES

Fed. R. Civ. P. 11 ............................................................................19

Fed. R. Civ. P. 12(b)(6) ...................................................................7

Fed. R. Civ. P. 15 ............................................................................1

Local Rule 7.1(c) ...........................................................................20

1 McCarthy on Trademarks and Unfair Competition § 7:82 (5th ed.) ..........................14

Restatement (Third) of Unfair Competition § 17 cmt. c, illus. 8 (1995) ......................13

## PRELIMINARY STATEMENT

Plaintiff Todd Bank is now on his third complaint. In his first lawsuit against Defendant NFL Properties LLC ("NFLP"), *Bank v. NFL Properties LLC*, Case No. 1:24-cv-08814-CM (S.D.N.Y.) ("*Bank I*"), Bank filed two complaints, each of which NFLP moved to dismiss because there was no justiciable controversy and Bank failed to state a claim. Bank did not oppose NFLP's motions. Bank amended his complaint once as matter of course under Rule 15(a)(1) in response to the first motion to dismiss, and voluntarily dismissed his amended complaint in response to the second motion. Bank then *refiled* his complaint—effectively a second amended complaint—in a new action rather than opposing NFLP's motion to dismiss or seeking leave to file a second amended complaint. This latest complaint consists of nearly *thirty pages* of legal argument—more than the allowable page limit had Bank filed an opposition brief—designed to respond to NFLP's motion to dismiss arguments in *Bank I*. Yet, despite Bank's attempt to subvert the Federal Rules of Civil Procedure, his third attempt fares no better than his first two. He merely persists on his request that this Court dismantle U.S. trademark law.

Bank presses his claim for a declaratory judgment that all trademarks owned by the National Football League ("NFL") and its 32 member clubs ("Member Clubs") are unprotectable because consumers who buy NFL-branded products associate the NFL trademarks with the NFL or its Member Clubs, that is, with the source or sponsor of the product. Bank's claim fails because that association by consumers is precisely what trademark law protects—the goodwill that a business creates through its operations and identifies with its trademarks. Contrary to Bank's contention, there is no distinction under U.S. trademark law between the NFL and its Member Clubs as what he defines as "Primary Product Sources" or "Product Sponsors" (i.e., trademark holders) and as a football league and teams. And courts have squarely rejected Bank's argument that goods bearing sports teams' names and logos are "functional." The latest complaint adds no

1

new facts to the prior complaints relevant to the substantive claim—just improper legal argument and conclusory statements. As in *Bank I*, the complaint's basis for relief contradicts the core purpose of trademark law: to protect consumers and brand-owners by preventing confusion about a product's origin or sponsorship. Bank, therefore, does not, and cannot, plausibly state a claim that the NFL trademarks are somehow unprotectable.

While the current complaint remains legally deficient, the Court need not engage with Bank's flawed interpretation of trademark law because this supposed dispute remains purely academic. Bank has once again failed to establish a justiciable controversy. As Bank set forth in the amended complaint in *Bank I*, but deleted from the current complaint, Bank is not genuinely interested in selling merchandise bearing NFL trademarks, but rather—as he previously pleaded— he is an "annoyance lawyer" whose business is filing *pro se* lawsuits, not selling t-shirts. None of the steps he has allegedly taken to manufacture a justiciable controversy demonstrate a genuine intent to sell merchandise bearing NFL trademarks. The reason for that is simple: Bank does not have a bona fide interest in doing so. Rather, he pleads a series of superficial acts—including registering a domain name the morning before filing this latest lawsuit—to convince the Court of a sudden intent to become an online retailer of NFL merchandise rather than a career plaintiff. The Court should look through this charade and determine no actual case or controversy exists.

Accordingly, Bank lacks Article III standing and the Court lacks subject matter jurisdiction. The complaint should be dismissed for this additional reason as well.

## FACTUAL BACKGROUND

### I.    The Parties

Defendant NFLP, the NFL's merchandising and licensing arm, is responsible for negotiating with and licensing vendors to create merchandise bearing the NFLP's and Member Clubs' marks. Compl. ¶ 13 (ECF No. 1). Such licensed merchandise must comply with NFLP's

rigorous quality standards.  NFLP owns nearly 100 federally registered trademarks and the Member Clubs collectively own many hundreds more, in addition to numerous NFLP and Member Club marks protected by state registrations and common law.  These marks, many of which are incontestable under 15 U.S.C. § 1065, include the NFL Shield and the logos for the 32 member teams (the "NFL Marks").  Compl. ¶¶ 73-74.  The NFL Marks' registrations include the precise class of goods targeted by Plaintiff—namely, "t-shirts" (Compl. ¶¶ 89-91).  *See, e.g.*, U.S. Reg. No. 2,941,347.

NFLP uses the NFL Marks itself and also licenses them to third parties.  By virtue of this continuous and extensive use of the NFL Marks, the NFL Marks have developed immense goodwill and strength as identifiers of the NFL and its Member Clubs, as both the source and the sponsor of products and services that use the NFL Marks with NFLP's authorization.

Many courts, including in cases cited in Bank's November 1, 2024 letter to the NFL (Compl. Ex. C), have held that the NFL Marks are well-known source indicators of the NFL and its Member Clubs.  Use of those marks on products connotes affiliation with or endorsement by those entities.  *See, e.g.*, *Nat'l Football League v. Coors Brewing Co.*, 205 F.3d 1324 (2d Cir. 1999); *Indianapolis Colts Inc. v. Metro. Balt. Football Club Ltd.*, 34 F.3d. 410 (7th Cir. 1994), *overruled on other grounds by Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), as corrected (May 12, 2014); *NBA Props.*, *Inc. v. Dahlonega Mint, Inc.*, 41 F. Supp. 2d 1341, 1347 (N.D. Ga. 1998); *Nat'l Football League Props., Inc. v. N.J. Giants, Inc.*, 637 F. Supp. 507 (D.N.J. 1986); *Nat'l Football League Props., Inc. v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651 (W.D. Wash. 1982); *Nat'l Football League Props., Inc. v. Consumer Enters., Inc.*, 26 Ill. App. 3d 814, 327 N.E. 2d. 242 (1975).

Plaintiff Bank, a self-branded "annoyance lawyer,"[1] "is an attorney who appears regularly as a pro se litigant in courts throughout New York." *Bank v. Katz*, No. 08-cv-1033, 2009 WL 3077147, at *1 (E.D.N.Y. Sept. 24, 2009), *aff'd*, 424 F. App'x 67 (2d Cir. 2011). Bank is a professional plaintiff and attorney, not an online retailer. He routinely lodges unsuccessful challenges to well-established legal principles, without regard to the strain on courts and opposing parties. *See, e.g.*, *id.* (unsuccessful suit against a New York judge and court clerk because they did not permit him to appear in court wearing a baseball hat and jeans); *Bank v. Brooklyn Law Sch.*, No. 97-cv-7470, 2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000) (dismissed suit against Bank's alma mater for false advertising); *Bank v. United States Dep't of the Treasury*, No. 19-3977, 2021 WL 5022645 (2d Cir. Oct. 29, 2021) (dismissed action against U.S. government over the Affordable Care Act).

Bank is also the named plaintiff and attorney in a slew of failed lawsuits alleging violations of the Telephone Consumer Protection Act. *See, e.g.*, *Bank v. Uber Techs. Inc.*, No. 15-cv-4858, 2015 WL 8665441 (E.D.N.Y. Dec. 11, 2015) (motion to dismiss granted), *aff'd*, 669 F. App'x 579 (2d Cir. 2016); *Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, at 7-8 (2d Cir. 2020) (affirming dismissal); *Bank v. Spark Energy, LLC*, No. 19-cv-4478, 2020 WL 5752185 (E.D.N.Y. Sept. 24, 2020) (motion to dismiss granted), *aff'd*, 860 F. App'x 205 (2d Cir. 2021); *Bank v. Sirlin*, 830 F. App'x 690 (2d Cir. 2020) (affirming dismissal); *Bank v. Gohealth, LLC*, No. 19-cv-5459, 2021 WL 1884671 (E.D.N.Y. May 11, 2021) (motion to dismiss granted), *aff'd*, No. 21-1287-cv, 2022 WL 1132503 (2d Cir. Apr. 18, 2022); *Bank v. Alleviate Tax, LLC*, No. 23-cv-5457, 2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) (motion to dismiss granted).

---

[1] *See* Tom McParland, "'Annoyance Lawyer' Loses Appeal in First Trip to 2nd Circuit Since Public Reprimand," NEW YORK LAW JOURNAL, (June 8, 2021, 2:41PM), https://www.law.com/newyorklawjournal/2021/06/08/annoyance-lawyer-loses-appeal-in-first-trip-to-2nd-circuit-since-public-reprimand/?slreturn=20241226134820.

Notably, this is not Bank's first frivolous trademark action.  He unsuccessfully challenged the validity of a restaurant's registered trade dress consisting of goats on a grass roof as "demeaning to goats."  *Bank v. Al Johnson's Swedish Rest. & Butik, Inc.*, 795 F. App'x 822, 823-25 (Fed. Cir. 2019).  The court dismissed the case and awarded the trademark registrant its full costs and attorneys' fees for the appeal, including all motions filed in connection with the appeal, finding Bank's appeal frivolous, including because he had multiple cancellation petitions with respect to this trademark dismissed by the Trademark Trial and Appeal Board for lack of standing. *Id.* at 826-27.

## II.    Plaintiff's Complaint for Declaratory Judgment

Prior to bringing this lawsuit, Bank wrote to the NFL, claiming that he represented a John Doe client who wanted to sell NFL merchandise without a license.  *See* Compl., Ex. C.  When Bank filed the initial complaint in *Bank I*, he revealed that his claim to be representing a "John Doe" client was a ruse and that he was representing himself.

In *Bank I*, Bank originally alleged that he *wished* to establish an e-commerce store selling merchandise not licensed by NFLP that would bear certain NFL Marks.  *Bank I*, ECF 1 ¶ 16.  Then, in his amended complaint in *Bank I*, he alleged that he *would* establish such an internet store "if granted the relief sought" and that he "researched" steps needed to establish an internet store to sell merchandise bearing NFL trademarks.  *Bank I*, ECF 21 ¶¶ 28, 36.  NFLP moved to dismiss both complaints because, among other things, Bank did not demonstrate a definite intent to use NFL Marks on the products.  For example, Bank failed to allege any concrete steps taken to establish an internet store or sell products bearing any NFL trademark.

Rather than oppose NFLP's motion or seek leave to amend, Bank voluntarily dismissed the *Bank I* amended complaint (*Bank I*, ECF 24) so he could further amend without leave and pay

lip service to some of the shortcomings of his prior pleading, including *thirty pages* of improper legal briefing. *See e.g., Hayles v. Aspen Props. Grp., LLC*, No. 16 Civ. 8919, 2018 WL 3849817, at *4 (S.D.N.Y. Aug. 13, 2018) (vacated in part on other grounds) ("[I]t is inappropriate to include a legal argument and briefing within a complaint") (citations omitted).  In this latest complaint, Bank alleges that he purchased 33 blank t-shirts and attached patches of the "NFL Shield" and each Member Club's "Principal Symbols" to one of those t-shirts.  Compl. ¶¶ 89-91. He also alleges that he registered a domain name—which the Court can discern from the publicly available domain registration was registered the same day he filed the complaint[2]—and created one page of basic content for the website, but does not currently sell anything on that site. *Id.* ¶¶ 92-93.  Finally, he alleges that if he is granted the relief requested, he will make the website operational and sell the unlicensed merchandise on the website. *Id.* ¶¶ 94-96.  Rather than demonstrate a genuine intent to become an online retailer, these allegations highlight that Bank is trying to take the minimum steps possible to create the illusion of controversy and allow him to engage in his actual profession: filing *pro se* lawsuits.

Bank argues that he should be able to sell the unlicensed t-shirts because the NFL Marks are allegedly functional and thus unprotectable. *Id.* ¶¶ 84-88, Ex. C.  The only basis Bank proffers for his theory that the NFL Marks are functional is the unsupported conclusion that fans supposedly primarily buy merchandise bearing the NFL Marks to identify with or show allegiance to a Member Club in its "capacity" as a football team or the NFL in its "capacity" as a football league, rather than in their "capacit[ies]" as trademark holders. *Id.* ¶¶ 76, 82-83, Ex. C.  As set forth below, this legal theory is meritless and the complaint should be dismissed with prejudice.

---

[2] https://www.whois.com/whois/fairgamemerch.com.

## ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The Declaratory Judgment Act permits a district court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[The] phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Under Article III of the Constitution, to invoke the jurisdiction of a federal court, "a plaintiff must establish that an actual case or controversy exists between the parties." *Bd. of Educ. v. Califano*, 479 F. Supp. 561, 562 (S.D.N.Y. 1979) (citations omitted). Therefore, an action seeking declaratory relief satisfies the case-or-controversy requirement, and thus establishes subject matter jurisdiction, only if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests" and is "real and substantial," such that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc.,* 549 U.S. at 127 (citations omitted).

If a plaintiff cannot establish there is an actual controversy, Rule 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. *See Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504 (2d Cir. 1968) ("The existence of an actual controversy in the constitutional sense is of course necessary to sustain jurisdiction under the Declaratory Judgment Act."). This determination must be made considering only the facts and circumstances at the time the suit was filed. *See Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020).

## II. The Complaint Should be Dismissed Because There is No Justiciable Controversy

Setting aside Bank's unfounded legal trademark theory, Bank has failed to allege facts to support that a case or controversy exists in the first place. A plaintiff in a trademark declaratory judgment action must "adequately allege that he or she 'has engaged in a course of conduct evidencing a *definite* intent and apparent ability to commence use of the marks on the product'" to establish a case or controversy. *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020) (emphasis added) (quoting *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595-96 (2d Cir. 1996)). Bank must show more than a "vague or general desire" to use the marks in commerce. *Starter Corp.*, 84 F.3d at 596. Instead, he must show he is "actively preparing to produce the article in question. This is the last point before the point of no return." *Id.*; *see also Saleh,* 957 F.3d at 356 (finding no justiciable controversy where appellant designed styles of t-shirts, but lacked inventory and had not undertaken relevant sales or marketing outreach); *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1007, 1015 (N.D. Ill. 2007) ("play[ing] around with the menu" and beginning to search for a suitable location did not demonstrate actual preparations that "advanced significantly beyond [a] statement of intent.").

"While the specific wording of the intent and ability prong differs somewhat in different cases, all manifestations of the test share the basic purpose of ensuring that the plaintiff *truly*

*intends* and is able to undertake a potentially infringing activity, while acknowledging that it would be economically wasteful to require a plaintiff to embark on an actual program of manufacture, use or sale which may turn out to be illegal." *Sobini Films v. Tri-Star Pictures, Inc.*, No. cv-01-06615-ABC, 2001 WL 1824039, at *4 (C.D. Cal. Nov. 21, 2001) (emphasis added) (citing *Matthew Bender & Co., Inc. v. West Publishing Co.,* No. 94 Civ. 0589, 1996 WL 223917, at *3 (S.D.N.Y. 1996)).

Here, it is apparent from the complaint and prior pleadings that Bank does not "truly intend" to sell products bearing NFL trademarks. *Sobini Films*, 2001 WL 1824039 at *4. Bank is now on his third complaint, each time adding perfunctory steps to create an appearance of legitimacy to allow him to bring his otherwise frivolous claim. Despite his efforts to fabricate a controversy, the additional steps alleged in this third complaint, such as registering a domain the same day he brought this lawsuit and creating ***one*** t-shirt bearing a trademark for each NFL Member Club, as well as one for the NFL itself (for a total of just 33 shirts), were not for the genuine purpose of establishing an online retail store to sell merchandise bearing NFL trademarks, but rather as an ill-conceived attempt to overcome the deficiencies raised by NFLP in *Bank I*. Taking the bare minimum of steps each time to manufacture an apparent controversy, however, does not demonstrate the requisite "definite intent" to sell infringing goods.

That Bank has no prior experience in the sports merchandizing industry or any online retail further underscores that he has no real interest in selling the products bearing NFL trademarks. *See Geisha*, 525 F. Supp. 2d at 1015 ("Nor does the record reveal whether Tuccillo has ever opened a restaurant before, or indeed whether he has any food service experience beyond his frozen seafood business."). Rather, as he has previously pleaded, he is an attorney who regularly brings legally dubious claims on behalf of himself. *Bank I*, ECF 21 ¶ 1.

9

And, even if Bank's attempt to manufacture a controversy could be interpreted as legitimate, such steps are insufficient to establish that Bank engaged in meaningful conduct such that he is at "the last point before the point of no return." *Starter Corp.*, 84 F.3d at 596. He has not alleged, for instance, that he "invested a significant amount of time and money," "conducted a consumer survey," "made strategic decisions regarding who should manufacture [the products]," or "attempted to find a manufacturing partner." *Id.*; *see also Sobini Films*, 2001 WL 1824039, at *5-6.

Bank's contrived allegations demonstrate he does not have a "definite intent" to sell products bearing the NFL Marks. *Saleh,* 957 F.3d at 354. Moreover, Bank's minimal efforts are precisely the type that courts have found unsatisfactory to establish that a party is "actively preparing to produce the article in question" and is at "the last point before the point of no return." *Starter Corp.*, 84 F.3d at 596. The complaint should be dismissed with prejudice on this basis alone.

## III.    The Court Should Invoke its Discretion to Dismiss the Declaratory Judgment Action

In addition to Bank's insufficient allegations to establish a justiciable controversy, the Court should also use its discretion to decline to proceed with the declaratory judgment action in any event. "[E]ven when justiciability is present the court is not required to proceed with the declaratory judgment action, for it is well settled that a trial court's decision to exercise declaratory jurisdiction is a discretionary one." *Muller*, 404 F.2d at 505. In determining whether to exercise discretion to hear a declaratory judgment claim, a key factor is whether the declaratory judgment remedy would "serve a useful purpose in clarifying and setting the legal relations in issue," *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992), or whether it is "unlikely to end uncertainty and controversy between the parties." *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352, 2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010).

10

Courts in this district have declined to exercise jurisdiction in circumstances such as these. For example, in *Rolex Watch U.S.A., Inc. v. PRL USA Holdings, Inc.*, the court found the claim too abstract to serve a useful purpose and unlikely to end controversy between the parties where declaratory judgment would require the court to "construct the future framework of the interaction between the parties in the absence of a specific dispute about an imminent activity." No. 12 Civ. 6006, 2015 WL 1909837, *4 (S.D.N.Y. Apr. 25, 2015) (citations omitted). The court further found declaratory judgment inappropriate because it would have required the court to "risk making false assumptions about [a party's] eventual course of action in commercializing the disputed products." *Id.*; *see also Bruce Winston*, 2010 WL 3629592, at *6 ("The issues in this case are hypothetical because … any declaratory judgment action would necessarily entail advisory opinions into how far the plaintiffs can go in its future activities without infringing on the defendants' marks.").

Moreover, the *Rolex* court acknowledged that there were "legitimate concerns about whether the parties [could] litigate questions of infringement or dilution (in connection with the declaratory judgment claim) without evidence flowing from the products' existence in the markets." *Rolex Watch U.S.A., Inc.*, 2015 WL 1909837 at, *4. The court declined jurisdiction even though plaintiff alleged which types of products were to be sold and which marks such products would bear, because adjudicating the action would have required the court to make "assumptions about [the] eventual course of action in commercializing the disputed products." *Id.* Similarly, proceeding with this declaratory judgment action would require the Court to make myriad assumptions about Bank's potential conduct because he has yet to commercialize or place the products in the marketplace. The fact that Bank has no bona fide intent to sell the merchandise further demonstrates that the declaratory judgment would serve no useful purpose. Accordingly, the Court should employ its discretion to decline to exercise jurisdiction.

IV.    **The Complaint Should be Dismissed Because Plaintiff's Legal Theory Fails as a Matter of Law**

Bank also fails to state a claim as a matter of law because he does not plausibly allege a cognizable theory that the NFL Marks are functional and therefore unprotectable.  Under trademark law, functionality may be either (1) "traditional" or "utilitarian"; or (2) "aesthetic." *Christian Louboutin, S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012).  Bank asserts both theories of functionality.[3]  *See* Compl. ¶¶ 27-28, 84-88, Ex. C.

The NFL Marks are not functional in either sense.  A trademark is functional, from a utilitarian perspective, where it is considered "essential to the use or purpose of the article" or "affects the cost or quality of the article." *Christian Louboutin*, 696 F.3d at 219 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850, n.10 (1982)).  For example, the Second Circuit held that the strap and raised heel tab on a shoe were functional because "they enable the user to put the shoe on and wear it." *Eliya, Inc. v. Steve Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018).

The NFL Marks are not functional in a utilitarian way because they are not essential to the functioning or quality of the product.  For instance, a knit hat made by an NFL licensee with or without an NFL Mark will equally keep a consumer's head warm. *See, e.g.*, *Who Dat Yat Chat, LLC*, 2012 WL 1118602, at *12 ("Under the traditional formulation, the phrase [Who Dat] would not be functional because it is not essential to the use or purpose of the garment. The garment's central purpose of covering the wearer is preserved regardless of whether there is text on the garment.").  Likewise, a mug will hold coffee just as well whether it features the logo for Starbucks or the New York Giants.  The purpose of the NFL Marks is to signal that a product originates from

---

[3] Bank also alleges that the NFL Marks are expressive or communicative and, therefore, functional.  Compl. ¶¶ 31-34, 87-88.  Bank's so-called expressive and communicative functionality, however, is just a type of aesthetic functionality. *See Who Dat Yat Chat, LLC v. Who Dat, Inc.*, Nos. 10-1333; 10-2296, 2012 WL 1118602, at *13-15 (E.D. La. Apr. 3, 2012).

or is approved by the NFL or its teams (*see* Compl. ¶¶ 76-77), so the NFL Marks function precisely how a trademark should—as source identifiers. *See, e.g.*, *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 138 (2d Cir. 2023) ("A trademark is used as a 'source identifier' when it is used 'to identify or brand a defendant's goods or services' or to indicate the 'source or origin of a product.'") (quoting *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 156 (2023)).

Nor are the NFL Marks aesthetically functional. The doctrine of aesthetic functionality holds that if "an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection." *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990). "A feature is ornamental if it is added *purely* for aesthetic reasons and serves *no* source-identifying purpose." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 246 (S.D.N.Y. 2012) (emphasis added).

The Restatement (Third) of Unfair Competition provides the following example of aesthetic functionality:

> A is the first seller to market candy intended for Valentine's Day in heart-shaped boxes. Evidence establishes that the shape of the box is an important factor in the appeal of the product to a significant number of customers. Because there are no alternative designs capable of satisfying the aesthetic desires of these prospective purchasers, the design of the box is functional.

Restatement (Third) of Unfair Competition § 17 cmt. c, illus. 8 (1995). In a similar scenario, the Third Circuit found that the wedge shape of a red, green and white watermelon-flavored candy was functional because it was "more identifiable as a slice of watermelon." *PIM Brands, Inc. v. Haribo of Am., Inc.*, 81 F.4th 317, 323 (3d Cir. 2023). In contrast, the NFL Marks are not merely stylistic aspects of a branded product designed to make the product more appealing. Rather, *they are the brand itself*.

When deciding whether a mark is aesthetically functional, the court must "take care to ensure that the mark's very success in denoting (and promoting) its source does not itself defeat the markholder's right to protect that mark." *Christian Louboutin*, 696 F.3d at 222. As a leading treatise explained, "[t]he theory of defensive aesthetic functionality is the wrong approach to solve problems that arise when a trademark is used by defendant in an arguably 'decorative' sense, such as on T-shirts, tote bags and baseball caps. In such cases the question is the familiar but difficult one of whether there is a likelihood of confusion as to source, sponsorship, affiliation or connection. No notions of 'defensive aesthetic functionality' are proper to serve as a convenient escape from directly facing the question of likelihood of confusion." 1 McCarthy on Trademarks and Unfair Competition § 7:82 (5th ed.).

The McCarthy treatise notes that occasionally defendants in trademark infringement cases have argued they should be free to use a sports team's name or logo without a license because such use is aesthetically functional, but that "[t]his defense has been consistently rejected." *Id.* For example, the Trademark Trial and Appeal Board rejected the argument that an applicant could register for fan merchandise a mark similar to CHICAGO BEARS because a fan's use was "functional" in that it allowed a fan to communicate allegiance to the team. *Chi. Bears Football Club, Inc. v. 12th Man/Tenn. LLC*, 2007 WL 683778, at *13 (T.T.A.B. 2007). Similarly, a court rejected an argument that defendant was free to sell apparel imprinted with names and logos identifying The Ohio State University because it enabled fans to express their support for the university and its sports teams. *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 918, 920 (S.D. Ohio 2014); *see also Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1286 (11th Cir. 2020) ("[T]he customers who purchased [defendant's] [college]-branded merchandise, whether current students and faculty, alumni, or sports fans, did so because of the

merchandise's affiliation with the marks and because what the marks represent are meaningful to buyers."); *Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975) (rejecting aesthetic functionality defense finding defendant infringed the National Hockey League and its member hockey teams' trademarks).

The Eastern District of New York rejected a similar argument with respect to the NYPD's and FDNY's registered trademarks. In *City of New York v. Blue Rage, Inc*., plaintiff was selling unlicensed merchandise bearing the NYPD- and FDNY-trademarked logos and asserted that his conduct was not infringing because the marks were "decoration to signify the service" and thus were aesthetically functional. 435 F. Supp. 3d 472, 491 (E.D.N.Y 2020). The court rejected this argument, noting that "[b]y Defendants' reasoning, any logo or emblem would be precluded from trademark protection once it was used to 'decorate' or provide 'ornamentation' to an item of merchandise. They provide no case law to support such an expansive interpretation of aesthetic functionality." *Id.*

In sum, Bank's aesthetic functionality defense to his hypothetical future trademark infringement has been soundly and routinely rejected. Merely because consumers may purchase products bearing NFL Marks to communicate allegiance to the league or a team does not make the trademarks aesthetically functional under the law. Instead, the fact that fans associate the NFL Marks with the NFL and its Member Clubs (*see* Compl. ¶¶ 76-83) means that the NFL Marks serve as source identifiers—*which is precisely what trademark law protects*. *See* 15 U.S.C. § 1125(a)(1)(A) (any person who uses another's trademark in a manner that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . ." is liable for trademark infringement).

15

Moreover, there is nothing about the NFL Marks that "would significantly hinder competition by limiting the range of adequate alternative designs…." *Wallace Int'l Silversmiths*, 916 F.2d at 81. Bank is free to sell football-related merchandise provided he does not use or infringe any of the NFL Marks, which confirms that the NFL Marks are not aesthetically functional. *See Blue Rage*, 435 F. Supp. 3d at 491 (defendants had not established that they were unable to compete in the marketplace in part because the trademark registration at issue disclaimed the right to use "City of New York" and "police department" apart from the mark as shown, thus "leaving avenues using these phrases for Defendants to explore."). Bank's allegation that certain consumers find merchandise bearing NFL Marks more desirable does not, under applicable law, make such marks functional. *See Christian Louboutin*, 696 F. 3d at 222 ("[C]ourts must avoid jumping to the conclusion that an aesthetic feature is functional merely because it denotes the product's desirable source") (citations omitted); *see also Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 164 (1995) ("[trademark] law helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product").

Given the weight of authority undermining Bank's claim, he spends nearly *thirty pages* of the complaint not on factual allegations, but on improper legal briefing attempting to validate his untenable position. But the assortment of lengthy legal citations in the complaint—mostly articles from law school journals and outdated, out-of-circuit district court cases with little following—do not justify Bank's attempt to re-write trademark law. Compl. ¶¶ 17-72.

For instance, the court in *Plasticolor Molded Products v. Ford Motor Co.*, 713 F. Supp. 1329 (C.D. Cal. 1989), *vacated by consent judgment*, 767 F. Supp. 1036 (C.D. Cal. 1991), addressed the functionality of trademarks for car floor mats over 35 years ago and adopted a novel

16

"mixed use" approach, resulting in the denial of summary judgment and the parties ultimately agreeing to have the decision vacated. 713 F. Supp. at 1340; 767 F. Supp. 1036. The court's dicta on which Bank relies about the potential dual role of a New York Mets trademark was unrelated to any facts or decision in the case and this Circuit has never adopted the California district court's "mixed use" approach. 713 F. Supp. at 1332-33.

In *Who Dat Yat Chat*, the defendant argued that the "Who Dat" trademark was functional because "consumers demand[ed] t-shirts with the phrase … because of their desire to express group identity and to show support for the region and for the Saints football team" and therefore purchase the shirts "because of the words themselves, not because the phrase indicates the source or affiliation of the shirts." 2012 WL 1118602, at *5. The court declined to find the mark functional, however, as it was "bound by precedent suggesting that a consumer's desire to express his identity with a mark does not make it functional." *Id.* at *15.

The Middle District of Pennsylvania's ruling in *Penn. State Univ. v. Vintage Brand LLC*, 614 F. Supp. 3d 101 (M.D. Pa. 2022), merely declined to decide at that time whether the Penn State trademarks in that case were source identifiers (*id.* at 111-12), which the jury ultimately decided in rejecting the aesthetic functionality defense. *Penn. State Univ. v. Vintage Brand, LLC*, 4:21-cv-01091-MWB, Verdict Form [D.E. 335] at 6 (M.D. Pa. Nov. 19, 2024). That court's reasoning is also squarely at odds with cases such as *Blue Rage* finding that trademarks for such institutions do necessarily serve as source identifiers. 435 F. Supp. 3d at 491. Indeed, NFLP owns or controls trademark registrations on the same goods identified by Bank (i.e., t-shirts) for that very reason—to identify the NFL or the Member Clubs and the goodwill associated with them as the source or sponsor of those products bearing the NFL Marks.

Moreover, the decision in *Penn. State Univ. v. Vintage Brand LLC*, 715 F. Supp. 3d 602 (M.D. Pa. 2024), supports NFLP's position. The court held that "it cannot be said, as a matter of law, that Penn State's exclusive use and control of its marks would put Vintage Brand at a significant non-reputation related disadvantage." 715 F. Supp. 3d at 647. The court found that the use of the trademarks was not necessary for Vintage Brand to "compete in the athletics apparel marketplace or even the Penn State apparel marketplace" and Vintage Brand could instead compete in other ways that do not involve the use of Penn State trademarks. *Id.*

Bank also cites *Bd. of Governors of the Univ. of N.C. v. Helpingstine*, 714 F. Supp. 167 (M.D.N.C. 1989), to support his argument that the NFL's trademarks are functional. That case, however, did not address functionality and instead involved a likelihood of confusion analysis for non-competitive goods, which is inapplicable here. Bank concedes that NFLP sells competing merchandise bearing the NFL Marks. Compl. ¶¶ 2, 75, 79.

Lastly, *Univ. of Pittsburgh v. Champion Prods., Inc.,* 566 F. Supp. 711 (W.D. Pa. 1983), is readily distinguishable. First, unlike here where NFLP sells the precise products Bank purportedly seeks to sell, the plaintiff in that case did not market the same goods. *Id.* at 715-16. Second, as a matter of custom or practice, the university was not the sole or exclusive source of soft goods bearing its insignia and there were other unlicensed merchandisers of "Pitt" goods. *Id.* at 716. The evidence therefore demonstrated, and the court found, that there could be no likelihood of confusion as to sponsor or source. *Id.* at 716-17. In contrast, Bank does not (and cannot) allege that NFLP does not use the NFL Marks itself or that the NFLP does not strictly enforce its trademark rights when it licenses the NFL Marks to third parties. Third, the defendants in the *University of Pittsburgh* case had "*47 years*" of continuous and substantial sales" of the merchandise bearing the "Pitt" mark without a license, supporting the conclusion that consumers

were not confused as to source or sponsorship.  *Id.* at 713 (emphasis added).  No such history is alleged here.

Ultimately, Bank's complaint cannot state any viable theory supported by applicable law under which the NFL Marks could be found unprotectable under trademark law.  As a result, Bank's declaratory judgment action fails as a matter of law even if he had standing to bring the action in the first place, which he does not.

<u>**CONCLUSION**</u>

Accordingly, NFLP respectfully requests that the Court dismiss the complaint with prejudice in its entirety.  NFLP has also provided Bank notice of his legally frivolous claim pursuant to Rule 11(b) and (c) and reserves the right to move for sanctions upon receipt of the Court's decision on this motion to dismiss.

Dated: June 10, 2025                              Respectfully submitted,

                                                            */s/ Craig B. Whitney*

                                                            **PROSKAUER ROSE LLP**
                                                            Craig B. Whitney
                                                            Jeffrey Warshafsky
                                                            Nicole Sockett
                                                            Nicole Swanson
                                                            Eleven Times Square
                                                            New York, NY 10036
                                                            T: (212) 969-3241
                                                            cwhitney@proskauer.com
                                                            jwarshafsky@proskauer.com
                                                            nsockett@proskauer.com

                                                            *Attorneys for Defendant*
                                                            *NFL Properties LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(c) of the United States District Court for the Southern District of New York, I hereby certify that this brief contains 6,044 words.  In making this certification, I have relied on the word count feature of Microsoft Word, the computer program that I used to prepare this brief.

Dated: June 10, 2025

/s/ *Craig B. Whitney*
Craig B. Whitney
