UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————x

TODD C. BANK,

                          Plaintiff,

          -against-                                                    25-cv-3981 (CM)

NFL PROPERTIES LLC,

                          Defendant.
—————————————————————————x

**DECISION AND ORDER GRANTING
NFLP'S MOTION TO DISMISS THE COMPLAINT; DENYING NFLP'S MOTION FOR
COSTS; AND DENYING BANK'S MOTION FOR SANCTIONS**

McMahon, J.:

    Plaintiff Todd C. Bank, who purports to be an attorney and who is representing himself pro

se, has sued NFL Properties LLC ("NFLP") under the Declaratory Judgment Act, 28 U.S.C. §

2201, *et seq.* Bank seeks a declaration that he can sell tee shirts bearing NFL trademarks – which

he has not been authorized by the owners of those trademarks to use – without violating the

Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1114(1)(b), 1125(a)(1)(A), and 1125(c).

    Three motions are presently pending before the court.

    First, NFLP moves to dismiss Bank's complaint in its entirety and with prejudice, pursuant

to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

    Second, NFLP moves for costs pursuant to Fed. R. Civ. P. 41(d).

    Third, Bank moves for sanctions against NFLP pursuant to Fed. R. Civ. P. 11.

    For the reasons set forth below, NFLP's motion to dismiss Bank's complaint is GRANTED.

The motions for costs and sanctions are DENIED.

## BACKGROUND

This is a motion to dismiss, so the well pleaded facts in the complaint are presumed to be true. *Glob, Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allair Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)). However, that rule applies only to "well-pleaded" facts, not to purely conclusory allegations of fact or to Bank's legal conclusions. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009)).

Defendant NFLP is the merchandising and licensing arm of the National Football League ("NFL"), an association whose members are the NFL's thirty-two member football clubs ("Member Clubs"). NFLP is responsible for the licensing and protection of the names, logos, color combinations, uniform trade dress, slogans and other identifying marks and indicia of the NFL and its Member Clubs. Dkt. No. 17, at 2. NFLP owns nearly one hundred federally registered trademarks, and the NFL's Member Clubs own hundreds more.

At issue in this lawsuit are thirty-three registered NFL trademarks: one consisting of the well-known NFL Shield, and thirty-two marks, each of which is the identifying mark of one of the NFL's thirty-two Member Clubs (the "NFL Trademarks"). For example, the famous silver star outlined in blue that has long been the identifying mark of the Dallas Cowboys is one of the marks in suit; so is the charging buffalo's head that signifies the Buffalo Bills, the head of a one-eyed pirate in a football helmet backed by crossed swords that identifies the Las Vegas Raiders, and the stylized "NY" that symbolizes the New York Football Giants. NFLP's registration of the Trademarks constitutes *prima facie* evidence of the Trademarks' validity and of NFLP's exclusive right to use the Trademarks in commerce. 15 U.S.C. § 1115(a). At least some, if not all, of the marks are incontestable.

The NFL Trademarks are registered under a class of goods that includes tee shirts.

Plaintiff Todd C. Bank is an attorney. Bank is a self-proclaimed "annoyance lawyer"[1] who "appears regularly as a pro se litigant in courts throughout New York." *Bank v. Katz*, 2009 WL 3077147 (E.D.N.Y. Sept. 24, 2009), *aff'd*, 424 F. App'x 67 (2d Cir. 2011); *Bank v. CreditGuard of Am., Inc.*, 2020 WL 1516107, at *4 n.6 (E.D.N.Y. Mar. 30, 2020). He brings frivolous lawsuits for a living. The court is familiar with Mr. Bank because he was disciplined in the past by the Second Circuit for inappropriate conduct.[2]

Bank claims that he wants to sell NFL merchandise and he does not want to obtain a license from the owners of the NFL Trademarks to do so.

On November 1, 2024, Bank sent a letter to the NFL, ostensibly on behalf of his client, "John Doe," expressing his view that the sale of unlicensed NFL merchandise bearing registered trademarks would not constitute either trademark infringement or dilution, because the NFL Trademarks are "functional" under established trademark law. Bank's letter asked the NFL to respond by November 18, 2024 "to discuss the possibility of forging an agreement between NFLP and Mr. Doe that would enable him to sell NFL merchandise without fear of litigation." Compl., Ex. C, at 23.

The NFL, on behalf of NFLP, responded to Bank's letter on November 18, 2024. Needless to say, the League rejected out of hand Bank's assertion that the trademarks were "functional" or that Bank (or Doe, whom I suspect does not exist) could use them without authorization. Compl., Ex. D, at 1. NFLP advised Bank that, should his client engage in the unauthorized use of the

---

[1] Todd C. Bank, Attorney at Law, P.C., www.toddbanklaw.com (describing Bank as an "annoyance lawyer").

[2] *See Matter of Bank*, 206 A.D.3d 77, 83 (2022); Tom McParland, *Lawyer Removed From 2nd Circuit Arguments Petitions for En Banc Rehearing*, N.Y. L.J., Jan. 2, 2020,
https://www.law.com/newyorklawjournal/2020/01/02/lawyer-removed-from-second-circuit-arguments-petitions-for-en-banc-rehearing (describing Plaintiff as "a solo attorney who has branded himself the 'annoyance lawyer'").

Trademarks, "such use will constitute trademark infringement, dilution, and/or unfair competition, and also will misappropriate the goodwill and reputation of the NFL and/or its Member Clubs." NFLP expressly reserved all rights "to take appropriate action to protect the intellectual property of the NFL and its Member Clubs, including by contacting [John Doe's] web host company and any other online accounts (including social media accounts) requesting that any infringing uses of NFL Marks be removed." The letter further stated that NFLP would treat any unauthorized use of the Trademarks "as intentional and willful, which would entitle NFLP to enhanced damages and reimbursement of its attorneys' fees."

On November 19, 2024, Bank, suing on his own behalf (not on behalf of this "client" Doe) filed his first complaint against NFLP, seeking a declaratory judgment that his sale of unlicensed NFL merchandise would not violate Sections 1114 and 1125 of the Lanham Act. *See Bank v. NFL Properties LLC*, Case No. 1:24-cv-08814 (S.D.N.Y.) ("*Bank I*"). NFLP moved to dismiss the complaint, arguing that Bank lacked Article III standing. *See Bank I*, Dkt. No. 20. In response, Bank amended his complaint as a matter of course, as authorized by Fed. R. Civ. P. 15(a)(1). The NFLP again moved to dismiss, on the ground that Bank's amended complaint failed to plead a justiciable controversy. *See Bank I*, Dkt. No. 23. Two weeks later, before the court was able to rule on NFLP's motion to dismiss, Bank voluntarily dismissed his complaint pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See Bank I*, Dkt. No. 24.

After dismissing the *Bank I* complaint, Bank took further steps to prepare his unauthorized tee shirts for sale. Specifically, Bank purchased thirty-three embroidered patches, each patch bearing a different NFL Trademark. He then purchased thirty-three blank tee shirts and affixed an embroidered patch to each shirt. To sell his tee shirts online, Bank obtained a uniform resource locator (URL) and domain name – www.fairgamemerch.com – and created various webpages for

that site. He also took a photo of each of the thirty-three tee shirts he made and posted them to the website.

On May 12, 2025, Bank filed the instant complaint against NFLP, seeking the same declaratory relief as in *Bank I*. He pleaded the interim activity described in the preceding paragraph. Compl. ¶¶ 89–99.

The NFLP moves to dismiss Bank's complaint under Fed. R. Civ. P. 12(b)(1), arguing that Bank lacks Article III standing because he has failed to show that any justiciable controversy exists. In the alternative, NFLP asks the court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), because Bank fails to state a claim upon which relief can be granted.

## LEGAL STANDARD

### I.    Dismissal Pursuant to Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). In resolving a motion to dismiss for lack of subject matter jurisdiction made pursuant to Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

### II.    Dismissal Pursuant to Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but

the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at \*4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

## DISCUSSION

### I.    NFLP's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) is Granted

NFLP moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) on grounds that (1) Bank lacks Article III standing because no justiciable controversy exists, and (2) even if a justiciable controversy exists, the court should exercise its discretion to decline to proceed with the action. The motion is granted on the latter ground.

#### a.    A Justiciable Controversy Exists

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" or "controversies," as distinguished from advisory opinions. *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993).

The Declaratory Judgment Act provides that, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the Declaratory Judgment Act does not—and cannot—confer subject matter jurisdiction on a federal court. *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941).

"Subject matter jurisdiction under the Declaratory Judgment Act is limited to an actual controversy, and is coextensive with the case or controversy standard embodied in Article III of the Constitution." *In re Quigley Co., Inc.,* 361 B.R. 723, 736 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted). Put more simply, if there is no case or controversy, the court lacks subject matter jurisdiction over the action. *See, e.g., S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.,* 24 F.3d 427, 431 (2d Cir. 1994).

The question before a court faced with a declaratory judgment action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co.,* 312 U.S. at 273). To make this determination, the Second Circuit directs a district court to ask, "whether the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Saleh v. Sulka Trading Ltd.,* 957 F.3d 348, 354 (2d Cir. 2020). In the context of a trademark dispute, this requires that the plaintiff "adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Id.* "Allegations that a potential infringer is prepared to sell products bearing the . . . mark in the United States suffice." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC,* 628 F. Supp. 3d 501, 514 (S.D.N.Y. 2022), *aff'd,* 2024 WL 2720235 (2d Cir. May 28, 2024) (quoting *Saleh,* 957 F.3d at 355).

The party seeking a declaratory judgment "bears the burden of proving that the Court has jurisdiction." *E.R. Squibb & Sons,* 241 F.3d at 177 (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95 (1993)). Nevertheless, in a declaratory judgment action involving trademark

disputes, "the finding of an actual controversy should be determined with some liberality." *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996).

The NFLP urges the court to follow the Second Circuit's decision in *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020). In *Saleh*, the owner of an online business selling apparel bearing the mark "SULKA" filed suit against the owners of the United States trademark registration for the "SULKA" mark, seeking a declaratory judgment that the trademark had been abandoned. The *Saleh* court found that no justiciable case or controversy existed because the allegations in the complaint consisted almost entirely of conduct relating to the plaintiff's business in India and Thailand, as opposed to his business operations in the U.S. 957 F.3d at 355. The plaintiff's only allegation relating to the United States market was his application to register the trademark in the United States, which was deemed insufficient to show that he was prepared to sell products bearing the "SULKA" mark in the U.S. *Id.* at 355–56. In finding that the plaintiff was not prepared to enter the United States market, the *Saleh* court noted that the plaintiff was not in possession of any actual shirts bearing the mark at issue, and his website, which purported to offer the shirts for sale, added only digital marks to images of the shirts. *Id.* at 356.

While it is understandable that the NFLP would ask this court to follow *Saleh*, there are critical factual differences between that case and this one. Here, Bank has adequately alleged that he engaged in a course of conduct evidencing "a definite intent and apparent ability" to commence use of the NFL Trademarks on tee shirts in the United States market. Unlike the plaintiff in *Saleh*, who was not in possession of any actual shirts bearing the contested trademark, Bank has already designed, purchased, and affixed embroidered NFL Trademark patches to all thirty-three tee shirts he plans to sell. Of course, thirty-three shirts hardly a business venture makes, but at least Bank has gone beyond simply adding NFL logos to online pictures of tee shirts. Additionally, Bank has

obtained a website for the express purpose of marketing tee shirts bearing NFL Trademarks. He has created other content for the site as well, including multiple webpages titled "Home," "Terms," "Privacy," "Contact," and "Cart/Checkout." In short, Bank asserts that he has "taken all preliminary steps to make the site operative" and that, if granted the requested relief, he will immediately publish the content to the website and will draw attention to the site "by utilizing search-engine optimization and word of mouth." Compl. ¶¶ 96–99.

The NFLP contends that Bank does not "truly intend" to sell products bearing NFL Trademarks because Bank is not in the business of selling tee shirts and has no prior experience in the sports merchandizing or online retail industries – rather, he is a self-branded "annoyance lawyer" whose business is filing nuisance lawsuits. Dkt. No. 17, at 1. Bank's lack of genuine intent, the NFLP claims, is evidenced by his failure to allege any facts demonstrating his ability to manufacture and produce tee shirts *en masse* or of his "plan to create a real or lasting enterprise." Dkt. No. 31, at 3. According to NFLP, Bank has therefore failed to show "any definite intent or apparent ability to engage in ongoing business operations." Dkt. No. 31, at 2.

Bank does not assert that he intends to sell more than the thirty-three tee shirts he has already created. He does not pretend that he has any intention to create a profitable merchandising business. At this stage, however, Bank is only required to show a "definite intent and apparent ability *to commence use of the marks on the product*." NFLP fails to provide any authority in support of its assertion that, in order to establish a justiciable case or controversy, Bank must demonstrate a definite intent and apparent ability to create an ongoing, profitable business – something this court has little doubt he does not intend to do.

The NFLP further argues that even if Bank has a genuine intent to sell the tee shirts, his actions are insufficient to establish that he is "actively preparing to produce the article in question"

because he has not alleged that he invested a significant amount of time and money, conducted a consumer survey, made strategic decisions regarding who should manufacture the products, or attempted to find a manufacturing partner. Dkt. No. 17, at 10. The court disagrees. Bank is not required to allege that he took any specific actions, such as attempting to find a manufacturer, in order for the court to find that a justiciable controversy exists. *Saleh*, 957 F.3d at 356 ("We emphasize that we do not mean to imply that any particular action or combination of actions is always necessary to find that a case or controversy exists. For example, because he intends to start an online store, Saleh may not need to cultivate relationships with retail partners."); *Gelmart Indus., Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327, 333 (S.D.N.Y. 2014) (noting that "*Iqbal* and *MedImmune* do not require such a heightened level of particularity"). While Bank might not have conducted a consumer survey, for instance, it is clear that he has gone beyond "actively preparing" to produce tee shirts for sale. And because Bank has already produced the thirty-three shirts he intends to sell, he was not required, as a predicate for a finding of a justiciable controversy, to include in his complaint allegations about efforts (if any were made) to find a manufacturing partner or his strategic decisions regarding who should manufacture the products.

Taken together, Bank's actions demonstrate more than just a vague or general desire to use the Trademarks. By manufacturing the thirty-three tee shirts he intends to sell and creating the website over which to sell them, Bank has shown a definite intent and apparent ability to commence use of the NFL Trademarks in the United States market. There is, therefore, a justiciable controversy – even though this court has no doubt whatever that it was created for the sole purpose of allowing Bank to engage in annoyance litigation, and even though I am under no illusion that Bank plans to go into the tee shirt business in competition with the NFLP.

Moreover, NFLP's own statements show that Bank engaged in a course of conduct that brought the parties into adversarial conflict. *See Saleh*, 957 F.3d at 354 (stating that "the threat of future litigation remains relevant in determining whether an actual controversy exists") (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95–96 (2d Cir. 2011)). On November 18, 2024, NFLP told Bank in writing that his use of NFL Trademarks "will constitute trademark infringement, dilution, and/or unfair competition, and also will misappropriate the goodwill and reputation of the NFL and/or its Member Clubs." NFLP expressly reserved all rights "to take appropriate action to protect the intellectual property of the NFL and its Member Clubs," and stated that it will treat any unauthorized use of the trademarks "as intentional and willful, which would entitle NFLP to enhanced damages and reimbursement of its attorneys' fees." Though NFLP's letter may not explicitly threaten a lawsuit, the implication of the letter is clear: if Bank sells unauthorized tee shirts bearing NFL Trademarks, the NFLP will take legal action against Bank to protect its intellectual property rights. This is sufficient to show that the parties have adverse legal interests over the use of NFL Trademarks such that a justiciable case or controversy exists. *See Gelmart Industries, Inc.*, 120 F. Supp. 3d at 332 (denying motion to dismiss declaratory judgment action for lack of subject matter jurisdiction where defendant had "in sum and substance[] asserted that the proposed . . . mark is infringing and dilutive" through a cease-and-desist letter); *Sasson v. Hachette Filipacchi Presse*, 2016 WL 1599492, at *3 (S.D.N.Y. Apr. 20, 2016) (letter instructing plaintiff to "cease all use" of the mark, "never" use it "in the future," and "destroy" any labels bearing it was sufficient to establish a case or controversy even if it did not explicitly threaten suit); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 457 (S.D.N.Y. 2015) (letter stating that if plaintiff did not cease and desist from using defendant's mark, defendant would "vigorously protect[] its trademarks" was "clearly a threat of future litigation.").

Because Bank has met his burden to show that a justiciable case or controversy exists, the court concludes that it has subject matter jurisdiction over this dispute. Nonetheless, I will not be entertaining Mr. Bank's declaratory judgment action.

### b. The Court Declines to Hear the Case Under the Declaratory Judgment Act

The NFLP argues that, even if the court has subject matter jurisdiction over the present action, it should exercise its discretion under the Declaratory Judgment Act to decline to hear the case. Here it stands on firmer ground.

Even where the case or controversy requirement is met – that is, even when subject matter jurisdiction exists – a court may nevertheless decline to entertain a declaratory judgment action in an exercise of discretion. *In re Quigley Co., Inc.*, 361 B.R. at 735–36 (citing *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995)). The Second Circuit has set forth six factors that "should inform a district court's exercise of such discretion": (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to *res judicata*; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction. *Admiral Ins. Co. v. Niagara Transformer Corp.,* 57 F.4th at 99–100 (citing *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 105 (2d Cir. 2012)).

District courts have "broad discretion to weigh the factors" enumerated in *Admiral Insurance.* "No one factor is sufficient, by itself, to mandate that a district court exercise – or

decline to exercise – its jurisdiction to issue a declaratory judgment." *Id.* at 100. *See also Starr Indemnity & Liability Co. v. Exist, Inc.*, 2024 WL 503729, at *2 (2d Cir. Feb. 9, 2024) (holding that district court need not consider all of the *Admiral* factors where the omitted factors were "either irrelevant or deserve[d] less than 'significant weight.'"). "Likewise, these factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.*

The NFLP has advanced many significant arguments for abstention. But since I am exercising my discretion, I need to deal with only those that inform the court's ultimate decision – which is not to entertain this lawsuit.

Bank seeks a blanket declaration that he will not be liable under the Lanham Act if he sells tee shirts bearing NFL Trademarks. The reason he assigns is that the marks are "functional" – which is to say, he asserts that the marks are so essential to the functionality of tee shirts (the product on which he has placed them, and which he seeks to sell) that they cannot be trademarked.

But functionality is ordinarily an affirmative defense to an allegation of trademark infringement. *See LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985) (characterizing functionality as an affirmative defense); Black's Law Dictionary (9th ed. 2009) (defining a defense as "a reason why the plaintiff should not recover or establish that which he seeks by his complaint."). Courts routinely find that the use of the Declaratory Judgment Act to assert an anticipatory defense is improper because it "deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." *Starr Indem. &*

*Liab. Co. v. Exist, Inc.*, 2023 WL 4029821, at *7 (S.D.N.Y. June 14, 2023), *aff'd*, 2024 WL

503729 (2d Cir. Feb. 9, 2024) (quoting *Adirondack Cookie Co. Inc. v. Monaco Baking Co.*, 871

F. Supp. 2d 86, 94 (N.D.N.Y. 2012)). *See John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,

2011 WL 5245192, at *7 (S.D.N.Y. Nov. 2, 2011) ("[B]ecause the complaint Wiley brings before

the Court merely anticipates the defenses it would raise in a coercive action, this factor militates

against exercising jurisdiction"); *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d

684, 698 (D.C. Cir. 2015) ("The anticipation of defenses is not ordinarily a proper use of the

declaratory judgment procedure"); *Veoh Networks, Inc. v. UMG Recordings*, Inc., 522 F. Supp.

2d 1265, 1271 (S.D. Cal. 2007) (noting that "using the Declaratory Judgment Act to anticipate an

affirmative defense is not ordinarily proper.").

      So too here. By filing his complaint asserting only the anticipatory defense of

functionality, Bank is "depriv[ing] [NFLP] of [its] traditional choice of forum and timing."

      If Mr. Bank really wants to test the functionality of the NFL Trademarks, then he should

go active on his web page and offer his tee shirts for sale. If he does, the NFLP will undoubtedly

sue him for trademark infringement. At that point, he can then assert his affirmative defense of

functionality, and a court can and will decide that issue. I can see no reason to offer Bank any

comfort that he will not be sued if he decides to sell shirts bearing allegedly infringing marks. He

should be sued. That is the proper way of dealing with trademark disputes – not by dealing in

hypotheticals, but by creating actual instances of purported infringement (or, from Bank's

perspective, non-infringement).

      By bringing this action for a declaratory judgment, instead of acting on his asserted rights

and beliefs and accepting whatever consequences flow therefrom, Bank has forced the NFLP to

spend money needlessly, while wasting this court's time. Judicial economy is not served by

entertaining a lawsuit seeking a declaration that Bank has a defense to a claim of trademark infringement.

And while reaching the merits on the question of the "functionality" of the marks in connection with their use on tee shirts would bring this matter to a definitive end, so, I suspect, will a decision to abstain. For the decision to abstain forces Bank either to put up or shut up – either he sells the shirts and get sued (in which case he can assert his functionality defense), or (as I suspect will happen) he slinks off into the sunset.

Bank contends that he "brought this action as a matter of principle." Dkt. No. 40, at 8. Well, this court does not share Bank's principles. In an exercise of my discretion, I decline to take cognizance of Bank's premature declaratory judgment action. The NFLP's motion to dismiss the complaint is GRANTED. It is not necessary to consider the NFLP's alternative ground for dismissal, which is that the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.    The NFLP's Motion for Costs is Denied

The NFLP moves for costs pursuant to Federal Rule of Civil Procedure 41(d) on grounds that Bank acted improperly by voluntarily dismissing his complaint in *Bank I* and refiling it as a new action in the instant case.

NFLP asserts that Bank dismissed and refiled his complaint in order to evade the timing and page limitations on filing an opposition to its motion to dismiss in *Bank I*. According to NFLP, Bank should have opposed its motion to dismiss the amended complaint Bank had filed in the original action or sought leave of court to further amend his complaint.[3]

---

[3] Bank had already used his one amendment of right to file an amended complaint in the original action. *See Bank I*, Dkt. No. 21.

Bank responds that he could not have opposed NFLP's motion to dismiss in good faith, because he recognized that the court lacked subject matter jurisdiction over the action based on the facts alleged in his initial complaint – facts that he corrected in the weeks after he discontinued his original lawsuit. Bank further alleges that he could not have sought leave to amend his complaint, because the facts that give rise to subject matter jurisdiction (*see supra*, Section 1.A) did not exist at the time his original suit was filed – which is when the existence of subject matter jurisdiction is ascertained.

Federal Rule of Civil Procedure 41(d) provides that "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant," the court "may order the plaintiff to pay all or part of the costs of that previous action." Fed. R. Civ. P. 41(d)(1). District courts have discretion to award attorneys' fees as part of "costs" under Rule 41(d)(1). *Horowitz v. 148 South Emerson Assocs. LLC*, 888 F.3d 13, 25 (2d Cir. 2018). To recover costs under Rule 41(d)(1), the second action must be "predicated on the same facts," even where "the two actions involve different theories of recovery or distinct forms of relief." *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255 (S.D.N.Y. 2020).

The purpose of Rule 41(d)(1) is "to serve as a deterrent to forum shopping and vexatious litigation," and is [aimed at] "litigants . . . that file complaints and quickly dismiss them, perhaps in reaction to initial unfavorable rulings, or hoping for a subsequent case assignment to a judge they view as more favorable." *Horowitz*, 888 F.3d at 26. Although a defendant need not show that the plaintiff acted in bad faith to recover costs, a court can consider the plaintiff's motives in dismissing the prior action. *Preferred Freezer Servs., LLC v. Americold Realty Tr.*, 2020 WL 774132, at *3 (S.D.N.Y. Feb. 18, 2020). A court may decline to award costs under Rule 41(d) "if

it appears that there was a good reason for the dismissal of the prior action." *Preferred Freezer Servs., LLC v. Americold Realty Trust*, 2020 WL 774132 at *3 (S.D.N.Y. Feb. 18, 2020).

There is no dispute that Bank voluntarily dismissed his complaint in *Bank I* and just six weeks later filed his complaint in the instant action. It is also readily apparent that the instant action is "based on . . . the same claim[s]" as the complaint in *Bank I*. In both cases, Bank seeks a declaration that his sale of tee shirts bearing NFL Trademarks would not violate the Lanham Act because the trademarks are functional.

Moreover, there is at least some evidence that Bank dismissed his complaint in *Bank I* in order to forum shop. I have little doubt that one reason Bank discontinued the original action was to try to avoid having this court – which had expressed some skepticism about his claim that he could use the NFL Trademarks without authorization – preside over his case. I infer this because, when he filed the second lawsuit, Bank did not designate his new case as related to a recently filed and discontinued case, as required by this court's rules and as plainly indicated on the Civil Cover Sheet. The NFLP sought enforcement of the rule and the case ended being reassigned from my colleague Judge Carter to me by the court's Assignment Committee (over Bank's objection, see Dkt. No. 9).

But Bank is at least arguably correct that he had no choice but to discontinue and refile. He concluded that he could not rely on facts that did not exist at the time his original lawsuit was filed, but that were created subsequently, in order to confer subject matter jurisdiction over the original lawsuit – the reason being that subject matter jurisdiction is ascertained at the moment a lawsuit is filed. Dkt. No. 36, at 2. Therefore, he concluded that a motion for leave to amend would have been futile, and that he had no choice but to try a do-over. That is not a frivolous argument.

The NFLP's reliance on *Duffy v. Illinois Tool Works, Inc.*, 2021 WL 9471902 (E.D.N.Y. Sept. 30, 2021) to support the proposition that Bank could have sought leave from the court to amend his *Bank I* complaint is misplaced, because there was no question that subject matter jurisdiction existed at the time the plaintiff in *Duffy* filed his original complaint. The NFLP cannot have it both ways. If, as it argued, subject matter jurisdiction was lacking when the first lawsuit was filed, then Bank arguably could not cure by doing what he did in the weeks after he discontinued his original lawsuit to give rise to subject matter jurisdiction – create a website, create tee shirts, post the tee shirts, do everything except offer the tee shirts for sale. *See Integrated Tech. & Dev., Inc. v. Rosenfield*, 103 F. Supp. 2d 574, 578 (E.D.N.Y. 2000) (where amendment of the complaint can only be had by leave of the court, the court is precluded from granting such leave if subject matter jurisdiction under the original complaint is lacking).

It is true that the Second Circuit has never squarely addressed whether events occurring after the filing of a complaint can cure a jurisdictional defect that existed at the time of initial filing, *Saleh*, 957 F.3d at 354. However, this court's conclusion that the *Bank I* court lacked subject matter jurisdiction over the action is consistent with the weight of authority in this Circuit distinguishing between defective *jurisdiction* and defective *allegations of jurisdiction*. *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 388–89 (2d Cir. 2021) ("And it is well-understood that a plaintiff may cure defective jurisdictional allegations, unlike defective jurisdiction itself, through amended pleadings"); *Roche Cyrulnik Freedman LLP v. Cyrulnik*, 582 F. Supp. 3d 180, 187 (S.D.N.Y. 2022) ("Indeed, while a plaintiff can amend its pleadings to cure defective jurisdictional allegations, a plaintiff's amended pleadings cannot cure defective jurisdiction itself"); *Alix v. McKinsey & Co.*, 739 F. Supp. 3d 172, 188 (S.D.N.Y. 2024) (defect in

complaint was not amenable to cure because plaintiff lacked standing at the outset of the case). Here we were not simply dealing with defective allegations, but an actual defect in jurisdiction.

Because the *Bank I* court lacked subject matter jurisdiction over Bank's initial complaint, it was reasonable for Bank to believe that seeking leave to amend his complaint would have been futile. I thus decline to impose costs on Bank for discontinuing *Bank I* and filing *Bank II*. But for avoidance of doubt, nothing in this decision precludes the imposition of costs at some later date if the circumstances in *Bank II* so warrant. It only precludes the imposition of costs pursuant to Fed. R. Civ. P. 41(d) based on the discontinuance of *Bank I*.

### III. Bank's Motion for Sanctions is Denied

Bank seeks an order imposing sanctions on the NFLP under Federal Rule of Civil Procedure 11 for NFLP's filing of its motion for costs. Bank alleges that the NFLP's motion for costs is "based upon contentions that are neither warranted by existing law nor by any non-frivolous arguments for extending, modifying, or reversing existing law or for establishing new law," and was "made to harass" Bank and "to encourage the court to be prejudiced against Bank based on considerations that have no relevance to whether the [motion for costs] should be granted." Dkt. No. 38, at 1.

Absolutely not.

Federal Rule of Civil Procedure 11(b)(1) provides that, "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). A pleading or motion violates Rule

11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). Where Rule 11 has been violated, the court may, in its discretion, impose sanctions. Fed. R. Civ. P. 11(c)(1). A party moving for sanctions must do so in a filing that is "separate[] from any other motion" and that "describe[s] the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Rule 11 sanctions, however, should be reserved for extraordinary circumstances and are proper only upon a showing of objective unreasonableness. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003); *Park v. Seoul Broadcasting Sys. Co.*, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008).

Bank has not shown that the NFLP's conduct violated Rule 11. Bank has not identified any specific conduct, as required under Rule 11(c)(2), that demonstrates the NFLP's motion for costs was frivolous or that its legal arguments were objectively unreasonable under existing law. On the contrary, its application is entirely understandable. It appears that NFLP moved for costs based on its good faith belief that Bank should have amended his complaint in *Bank I* rather than file it as a new action. Given the lack of clarity in this Circuit about whether events occurring after the filing of a complaint can cure a jurisdictional defect that existed at the time of initial filing, the court finds that this belief was objectively reasonable. Bank has not introduced any evidence that NFLP filed its motion for costs in bad faith or for any improper purpose – unlike his own circumstance, where it appears that Bank tried to take advantage in order to avoid a judge who had expressed skepticism of his *bona fides*.

Bank's motion for sanctions is, therefore, denied.

## CONCLUSION

The Clerk of Court is respectfully requested to remove the motions at Dkt. Nos. 16, 29 and 38 from the court's list of open motions.

This is a written opinion.

This constitutes the decision and order of the court. It is a written decision.

Dated: October 20, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL